May it please the court. My name is David Clout and I represent appellants Richard A. Gray Jr. and the two entities that invested Mr. Gray's money at his direction in Wilson's fraudulent investment fund. You practice in Texas, right? Yes, sir. Welcome to the Ninth Circuit. You get argument here, not always in the Fifth. It's good to be here, sir. I will refer to these appellants collectively as Mr. Gray and I will reserve two minutes for rebuttal. This appeal involves two issues. First, whether Mr. Gray, a third party challenging the forfeiture of specific assets that were in Wilson's accounts, has prudential standing under the forfeiture statute, which allows third parties to pursue challenge to the validity of the forfeiture order. Second, whether Mr. Gray's interest in his deposit is greater than the fraudster Wilson's interest in it. Whether or not judged by the zone of interest test, Mr. Gray has prudential standing. As to the superiority of Mr. Gray's interest, that issue is disposed by a plain language reading of the applicable statute. If Mr. Gray's interest in his deposit is superior to Wilson's interest, a fact which both the district court and the government admit, Mr. Gray's money is not subject to forfeiture. Each of these issues involves a distinction which the government, in order to advance its position, necessarily ignores. With regard to standing, the law makes a distinction between a crime victim seeking restitution on one hand and a third party challenging the validity of a forfeiture order on the other. Before the crime victim may seek restitution from forfeited assets, the court must determine what assets are subject to forfeiture. Only the criminal's property is subject to forfeiture. 21 U.S.C. 853N provides third parties a vehicle at the outset and without regard to the third party's status as a crime victim to challenge the government's position that certain assets are subject to forfeiture. Once the court has resolved any challenges, the court determines what assets are forfeited. At that point, we enter round two. There, the crime victim can petition to have restitution from the forfeited assets. Although it is true that the law provides a vehicle for crime victims to seek restitution from forfeited assets, it is also true that the law allows a third party to assert an initial challenge as to whether assets may be included in the forfeiture at all. Each of these independent remedies is valuable and each has its place in the legislative scheme created by Congress. With this distinction in mind, the prudential standing issue becomes much clearer. Mr. Gray challenged the forfeiture of funds from Wilson's bank accounts that were directly traceable to Gray. At a time when Wilson's accounts contained only $324, Mr. Gray had wired $2.3 million to Wilson's accounts to be invested in the purported funds. Unbeknownst to Gray, Wilson was running a Ponzi scheme, defrauding approximately 75 investors of millions of dollars. Less than two weeks after Mr. Gray made his investment, the government completed its investigation of Wilson's fraudulent scheme, shut down his operations, arrested Wilson, and seized the remaining balance of the fund's accounts. During the extremely short period of time between Gray's investment and the seizure of Wilson's accounts, no other deposit was made to Wilson's account. Accordingly, all but $324 that preceded Gray's investment is money deposited by Gray. In other words, the money belongs to Mr. Gray and is not the criminal's property subject to forfeiture. So the district court felt that the remission procedure was the statutory, the relevant statutory scheme under which your client should proceed. How do you respond to that? Your Honor, remission and the forfeiture statute are not mutually exclusive. To go on with the prudential standing, and that's why Judge Carlton felt that Mr. Gray did not have standing to proceed underneath the forfeiture statute, I would like to continue and discuss the construction of 853N and 853N2, which uses the words any person. So it's not mutually exclusive and nowhere in the statute or in case law does it say you cannot go to forfeiture if you have the ability to go through remission. This case kind of turns in like one of these family cases where all the children are after each other. No one, I'm sure, here thinks that Mr. Wilson should get a dime of this money. And the question is, do we share it all among all of the people who are bilked, or does a priority occur because of a constructive trust? I mean, that's essentially the problem. And on both sides, there are arguments. The government brief is persuasive and yours is persuasive. It makes it difficult for a judge when both sides of the briefs are persuasive. We have to sort of take a look. And I was wondering if there's some other analysis other than what I got in the briefs. And I came into contact with this case, 11th Circuit, Ramuno. And I don't think that was cited in the briefs, but you're probably aware of the case. This seemed to make some sense. And what it did was said that before a constructive trust can have any benefit, it has to be approved by a court, and that the court can look at equity and justice. And in that case, as affirmed by the Court of Appeal in the 11th Circuit, what they did was take all of the money and share it pro bono based upon the amount that the various victims put into the trust. And the case read very well. And I wanted to give you a chance at it. If you're familiar with that case, I'd like to find out from you why you think we should not follow the 11th Circuit. That's R-A-M-U-N-N-O. Yes, Your Honor. The Ramuno Court rejected the claimant's contention that a constructive trust arises automatically whenever a fraud occurs because the contention is mistaken and it's not the law in Georgia. In short, the 11th Circuit said that Boylan, which is controlling in the 9th Circuit, isn't the law in Georgia. Boylan relied on California State law in order to determine the property interest. Once the property interest is determined, then Federal law determines whether that interest is a legal interest under 853 N6A and whether it's superior to the defendant's interest at the time of the fraud. So it seems to me that there's no inconsistency between Ramuno and Boylan or Hooper. It seems to go fit closely in all of them. What's wrong with adopting it? Legally, what's wrong with adopting the Ramuno approach? In order to adopt the Ramuno approach, Your Honor, you would have to overturn Boylan, which is the law in this circuit and which is based on California law and which California law states that it has the statute that allows that when funds are taken as a result of a fraud, the fraudster holds those funds in a trust for the benefit of the one that he defrauded. How is it inconsistent with Boylan? Your Honor, because Boylan says that it's an elementary mistake to suppose that a court creates the trust. The expression the court constructs the trust is absurd. The obligation is on the fraudster, is imposed by law, and arises immediately upon his acquisition of the proceeds of the fraud. So therefore, at the time, instantaneously at the time that the funds were transferred from Gray to Wilson, Wilson had the constructive trust imposed on him. And so the funds, which were Gray's prior to the time that he made the deposit, they were Gray's funds and then they were trust funds held in constructed trust. If you wait for the court to determine whether or not that occurs, then the inconsistency is whether or not the court will imply that, what test the court will go through in order to determine whether a constructive trust occurs or not. In California, the law is Boylan. It hasn't been overturned by the Supreme Court of California. And so therefore, it's still law that needs to be followed unless it's going to be overturned. Okay. That's very helpful. Thank you. Aside from Boylan, there's no reason you see why we could not adopt that. Boylan is the only impediment to adopting the approach, so there's a pro-ratus share. Yes, Your Honor. There are Boylan and then also the California statute, which imposes the constructive trust on the fraudster at the time that he deposits those funds. It's a statute that is out there that has been interpreted by this Court, and that's the interpretation, that it occurs simultaneously at the time that the funds are deposited with the fraudster. But I take it your position is you don't want a pro-ratus distribution. No, Your Honor. You say these monies are traceable to my client's investment, and that's the end of the story, right? That's your position. Yes, Your Honor. And because those funds are traceable, he has a specific interest in those funds. And that's the difference between him and the other individuals that invested earlier. The standard definition cited by the government of a Ponzi scheme is when you take a new investor's money and you pay it to old investors. And that's exactly what the government wants to do in this situation, is to take a new investor's money, $2.3 million apparently. There's approximately $1.9 million left because Mr. Wilson had spent some probably on day trading and making some mulling payments. But they want to take that $1.9 million and distribute it to the old investors. Well, can you explain briefly why Hooper doesn't apply? Your Honor, with Hooper, the Hooper case relied upon the district court does not support a different result in this case. Hooper involved money that was transferred out of the criminal's accounts to the criminal wife's. The wife's seeking relief under 853 N6 obtained their interest in their husband's drug proceeds through the crime and after the crime had occurred. Under these distinct circumstances, this court had the opportunity to know that Section 853 N6A is likely never to apply to the proceeds of the crime because the proceeds of the crime do not precede the crime. You need to have the crime. You need to have a drug transaction. The Hooper individuals had drugs. They sold those and then they obtained the drug proceeds and then the wives wanted to get an interest in that. This case involved money transferred by an innocent party into the criminal's account. The money was not the proceeds of a crime interest and that interest was independent of Wilson's crime and Gray had an interest that annotated the crime. And that's a specific exception that the Hooper court has recognized that would allow the court to find that the petitioner, Gray in this case, would have a superior right, title or interest to the money under 853 N6A. Well, then let's assume that your client is entitled to the funds in the Ameritrade account. Wouldn't you concede that the $425,000 that was transferred to Johnson should go to the government to be redistributed to? Your Honor, we did not get to that point because we were not, because Judge Carlton dismissed our petition, we were not able to have the hearing, which is provided for under 853 N. At the hearing. Well, let's assume you get the hearing. Yeah, assume you get the hearing. Your Honor, at that point in time, we would attempt to try to get those funds. We've worked with a certified fraud examiner in tracing those funds and that those funds were a constructive trust and we would attempt to get those funds back, but the government would make the argument that they were proceeds as to Nell Johnson and that she may, the government may try to get the $425,000 back. Well, you ended up with the $300,000 that didn't get resolved. What would we do? Remand it to see where that kind of washes out? Yes, Your Honor. Do you want to reserve the rest of your time? Yes, Your Honor. I'll reserve the rest of my time. May it please the Court, my name is Kristen Doerr. I'm an assistant United States attorney for the Eastern District of California, and I represent the appellee United States of America. This case is, first and foremost, about fairness. What was the district court to do with a $13 million fraud, only $2 million in recovered assets, but 75 victims, all of whom turned their money over to the defendant, Wilson, with the hopes of a handsome profit, and all of whom turned over their money to Mr. Wilson with no strings attached? Well, you face the same thing in bankruptcy court every day, and the rules of constructive trust get applied there because you decide whether or not somebody has a property interest in the claim or not, right? Yes. So what's different? Well, the difference is that Congress has decided that in a criminal matter where there are multiple victims of a fraud, Congress has returned forfeited assets either through the remission process or the restoration process. And whether that's the best idea or not is beside the point. But this is the system that Congress has determined is the fairest way to deal with a difficult situation. So in a criminal case like this, where the court has entered a $2.5 million restitution order, the process that our office would go through is to submit a restoration request to the asset forfeiture and money laundering section in Washington, and if it's approved, we would turn over the forfeited assets, the $1.9 million, to the clerk of the court, who would then distribute all of those assets to all of the victims listed in the restitution order on a pro rata basis. No, I understand the mechanism. I mean, the issue before us is standing, really, isn't it? Well, the prudential standing argument, yes, and that gets back to the prudential standing argument. Right. I mean, there's a — maybe it's being hyper-technical, but it seems to me one could say that Mr. Gray has prudential standing, and you go to the hearing on the merits, and you would have — you would make the same argument you made today, that the statutory — maybe I'm being hyper-technical, but it seems to me it's hard to argue he doesn't have prudential standing. He had money. It's traceable. It's in the hands of the defendant, now the government. Why not allow him to go to a hearing? You can make the same argument. Well — You can present his evidence. He actually — I mean, we agree that he and all the victims have Article III standing. Right. But the prudential argument is whether the — if the court may have jurisdiction over the case, but should it exercise jurisdiction and it is our position that when Congress set up these processes, remission or restoration, they determined that victims are not within the zone of interest that are protected in the criminal forfeiture statute. Both the Hooper case from 2000 and the statutes are very clear that in order to participate in the criminal forfeiture proceeding, only two categories of people can do so. First, somebody who has acquired the property to be forfeited as a BFP or bona fide purchaser for value, or someone who had an interest in the property before the crime was committed.  But that's why Mr. Gray can't meet that standard, is his interest on the constructive trust doctrine arose when Mr. Wilson committed the fraud. But under another section of 853, so did the government's. Under Title 21, Section 853C, all right title and interest in the forfeitable property vests in the United States. And that's what Hooper recognized is that the government also has an interest in the property. Gray's interest arises under a later section in 853 where he argues it does. But as Judge Carlton noted, when there's an interest in the government and an interest in a beneficiary of a constructive trust, who wins? And as the Court said, the tie goes to the government. And that's entirely consistent with the processes that Congress has set up to deal with victims. There's no indication in the forfeiture statutes that Congress intended the ancillary proceedings in the criminal forfeiture process to deal with victims, to be a liquidation proceeding for the benefit of unsecured creditors, which is exactly what Mr. Gray and the other victims are. Well, he claims a different property interest, and you've acknowledged that under California law he has a constructive trust. I mean, again, maybe the analogy to bankruptcy law is imperfect, but the same argument attaches in bankruptcy law. When the bankruptcy petition is filed, the estate is created with all the right title and interest in the estate. But it's subject to, for example, things like constructive trust, which separate out the property of the estate. And it seems to me his argument is different from just a generic argument that I contributed money and I lost it. I mean, he has traceable funds here. Well, interesting. Go ahead. The Boylan case is — does not address the tracing issue. In fact, an interesting point in the Boylan decision is that the district — this Court remanded the case back to the district court with instructions to make sure all the victims received their fair share. But Boylan doesn't in any way address tracing. Procedurally, Boylan was a very narrow case and so has little applicability. But the important thing is there was no discussion of tracing. There's nothing in Boylan that support Gray's argument that he and he alone gets to share in the forfeited assets. Indeed, if there is a constructive trust for the benefit of the fraud victims, why wouldn't that constructive trust encompass all of the victims? Well, because the property has been dissipated. I mean, that's the difference in his analysis is that he — when I say tracing, he has a concrete amount of money that you can identify to which the trust would arguably apply. Unfortunately, the rest of the victims don't. That money is gone. So that's the difference. Well, there are several cases, the BCCI opinion from D.C. Circuit, Andrew's case from the Tenth Circuit from several years ago, all of which say tracing is irrelevant in the context of a criminal forfeiture. Once a victim hands over their money to the defendant, they lose a property interest in it. Unless State law would create a property interest. That's the — I mean, that's his argument here. I agree with your analysis. The only question is, is whether California State law applies here to somehow circumvent it. Well, I would like to address that. Judge Carlton opined in his decision that the Boylan decision didn't address California law correctly. And Judge Carlton noted in his opinion that in 1975, the California Supreme Court in Davies v. Kranza held exactly the opposite of what the Boylan decision said was California law. In Davies v. Kranza, the Supreme Court interpreting California law said that a constructive trust is really — excuse me — is merely a remedy to compel a person not justly entitled to a property interest to transfer it to another who is entitled to it, and said, thus, a constructive trust does not exist until a court has decreed it. So that is California law. Right. But we have Boylan that binds us, so what do we do with that? Well, again, Boylan does not address two critical issues. Boylan did not address prudential standing, and Boylan did not address the criminal statutes that are at the heart of this case. Boylan was a civil case, so Boylan did not address the vested rights that arise in the government under 853C versus the rights of other individuals that are recognized in 853N. So Boylan has — Boylan, I don't think, is dispositive of the issues here because there are so many issues in this case that were not addressed in Boylan. Well, in your brief, you kind of suggest that the petition had to be dismissed, quote, since to grant it would leave all the remaining victims without the means to obtain restitution, end quote. That's kind of a Robin Hood argument, isn't it? Mr. Gray is rich. The remaining victims lost their homes, therefore, the petition must be denied. Well, procedurally what happened here is the district court had granted the government's motion to dispense with giving notice of the ancillary proceedings to the other victims, and the basis for that decision was the other nonjudicial remedies that Congress has set up for victims, that is, the remission or restoration process. So the government did not give notice, formal notice of these proceedings to anyone in accordance with the district court's order. Mr. Gray knew about the proceedings. I believe they had been — he had been in communication with Mr. Lapham and our criminal division, but none of the other victims were given formal notice because we advised the court that we would be following the procedures that Congress had set up for dealing with victims. So it's not a Robin Hood issue. It's if Mr. Gray gets all of the money and essentially, in essence, jumps to the front of the line and takes it all. But it's his money. He could trace it. Well, but it wasn't. He could trace it, but he did not have a property interest. There's nothing in the record, and Mr. Gray cited no case law supporting his argument that he retained a property interest in the money. So when he gave that money to Mr. Wilson to invest, he became — Well, absent the arguable imposition of constructive trust, you're right, and that's the issue. I guess my question is more basic, and maybe I'm just being hypertechnical, but we're talking about standing here. So as a question of standing, wouldn't it be more advisable to say, all right, Mr. Gray, you have your day in court. We're going to hear your arguments. We're going to give notice to all the other victims, and I'm going to consider the statutory schemes and determine whether or not you get your money back. Well, I think if Mr. Gray has standing, so does everyone else. Yes. I'm not saying they don't. And I think it takes little imagined to see the chaos that would develop in the district court, because under the Federal rules of criminal procedure 32.2, each and every one of those victims can conduct discovery and can file summary judgment motions. So we have 75 — What's wrong with that? I mean, maybe I'm analogizing the bankruptcy law too much, but this is exactly what happens in the thousands and hundreds of thousands of bankruptcy petitions that are filed every year. I mean, everybody has — all the creditors have a right to come in. They can conduct discovery. You know, life seems to go on for the bankruptcy courts. Well — I realize it's awkward, and the district courts prefer not to do it, but you're talking about a lot of money and a lot of victims. Well, and it does appear that Congress has made provisions for all those victims outside the court system. Another problem in allowing all of these victims to come in the district court is that the nature of each victim's interest is determined by State law. We have victims in California, Utah, Texas. We have in the Bahamas. Everybody's interest is going to be arguably different. You could have a victim in Georgia where the Ramuno case was decided, where the court said under Georgia law the constructive trust doesn't arise until the court says it arises. If you're in California and the court's following Boylan, the constructive trust arose at a different time. And who knows what Bahamas law is? Right. But again, these are property interests. These aren't just — that the States have decreed that are property interests or not property interests. And so it's not just a matter of being complicated. It's a matter of property rights. Correct. And the court and Congress appears to have decided that it doesn't want the district courts burdened with dealing with victims. The Attorney General's office can deal with the victims under the remission process or, which is what we would do here, the government would turn over the money to the court, and there's already a restitution order in place. So all the victims would get a pro rata share of the forfeited funds. Well, you talk about zone of interest, but the statute says any person, other than Wilson, of course, may bring a claim. Well, I know that that's Mr. Gray's argument, that the Supreme Court has interpreted a statute broadly. But in that course, in that case, the Bennett v. Spears case, the Supreme Court said that in determining what the zone of interest is, the court has to look at the specific statute at issue. And the specific statute at issue that Mr. Gray says gives him standing is 21 U.S.C. 853C. And there are two very narrow categories of individuals who get to participate in what are called the ancillary proceedings. And that is, again, somebody who has given value for an asset and isn't aware of any of the criminal background, or someone who had an interest in the property before the crime was committed. And it's inconceivable that Congress would have allowed victims to participate under that statute, yet create the remission and restoration processes. It just doesn't really address the situation in which the government interest and the individual's interest are coterminous, they're created at the same time. But I believe the Hooper decision addresses that. Tie goes to the government. If they both arise simultaneously, the government wins, but the victims are not left without a remedy. I think that's the important thing here. They can seek restoration or remission through the congressionally authorized procedures. Our questions have taken over your time. Are there any further questions from the panel? All right. Thank you very much. Thank you. Your Honor, fairness is relative. Mr. Gray proceeds underneath the statute 853N6, not 853C. 853C deals with assets that are already forfeited. 853N6 deals with property that is the subject of an order of forfeiture. And that's what he proceeds under. He proceeds under 853N. And under 853N6, he is able to establish a legal right, title, or interest in the property, such that the right, title, or interest renders the order of forfeiture invalid if the petitioner has an interest which is superior to any right, title, or interest the defendant had at the time of the commission of the acts. On the second part of my argument was that the government's interest does not come into this analysis that is in this statute. And the statutes are not mutually exclusive. We're at the beginning of the life cycle, if you will, to determine what assets will be forfeited so that later on they are available for remission. The zone of interest, as Judge Mills pointed out, it's extremely, it says any person is able to bring relief under this. It doesn't limit it to any non-victim. It says any person. Even if the zone of interest test did apply, I would point to Larazinko, this Court's opinion, which the Court relied on. It says that the Court used, quoted this one and said, quote, interest of crime victims in receiving restitution are not in the zone of interest implicated in the statute governing forfeiture hearings. And I would agree with that, but it doesn't do anything in regards to Mr. Gray because Mr. Gray was not before the Court seeking restitution. He was seeking, he was before the Court seeking his petition to challenge the forfeiture of his assets in which he had a property interest under Boylan in which he was able to trace and that everyone agreed, both the government and the Court agreed, that his interest in those assets was greater than the fraudster Wilson's. And finally, counsel said that Congress has decided that it's the remission process, but this Court stated in Larazinko that Congress has designated 853N as the means and the only means for third parties to vindicate their interest in forfeited property. Accordingly, Mr. Gray has prudential standing to bring that claim, whether it's under the zone of interest or whether it's just solely under any person. Thank you. Thank you, counsel. The case, as heard, will be submitted for decision. I want to thank both of you for your arguments. It's an interesting case. And we will be in recess. We will, for the students, we will first conference on our cases and then in about at least the initial conference in about 10 to 15 minutes we'll come back out and entertain some questions. So thank you very much.
judges: Mills, Wallace, Thomas